## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-_____

ASPEN INSURANCE UK, LTD., and
CERTAIN UNDERWRITERS AT LLOYD'S
Subscribing to Policy No. QA021508 and
Policy No. QA021608,

      Plaintiffs

v.

FISERV, INC.,
FISERV TRUST COMPANY (f/k/a
FIRST TRUST CORPORATION),
TRUST INDUSTRIAL BANK,
TD AMERITRADE ONLINE HOLDINGS CORP.,
TD AMERITRADE HOLDING COPORATION,
ROBERT BERIAULT HOLDINGS, INC.
LINCOLN TRUST COMPANY, and
NTC & CO., LLP

      Defendants

---

## COMPLAINT FOR DECLARATORY JUDGMENT
---

Plaintiffs Aspen Insurance UK, Ltd. ("Aspen") and those Underwriters at Lloyd's ("Underwriters") subscribing to Policy Nos. QA021508 and QA021608, by and through their attorneys, file this Complaint against Fiserv, Inc., Fiserv Trust Company, Trust Industrial Bank, TD Ameritrade Online Holdings Corp., TD Ameritrade Holding Corporation, Robert Beriault Holdings, Inc., Lincoln Trust Company, and NTC & Co., LLP (collectively, the "Defendants") and state as follows:

## INTRODUCTION

1. This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2. This case involves a dispute between the parties with respect to coverage under a primary policy and excess professional indemnity policy ("the Policies") issued by the plaintiff insurers ("Insurers") to Fiserv Trust Company ("FTC") and certain of the other defendants named in this action.

3. Defendants in this action have also been named as defendants in at least four class action lawsuits and one arbitration proceeding involving the widely-publicized Ponzi scheme by Bernard L. Madoff ("Madoff") and his failed securities brokerage firm, Bernard L. Madoff Investment Securities, LLC ("BLMIS"). Plaintiffs in the underlying actions are FTC customers who opened self-directed Individual Retirement Accounts ("IRAs") with FTC serving as the custodial trustee. Plaintiffs in the underlying actions allege in part that the FTC defendants breached their duties as custodial trustee for plaintiffs' self-directed IRAs invested with Madoff and BLMIS.

4. Defendants are seeking coverage under the subject Policies for Damages and Defense Costs they have incurred and may incur in connection with the underlying Madoff actions (the "Madoff Actions").

5. The Insurers have denied coverage for the Madoff Actions pursuant to the Insolvency Exclusion in the Policies which applies to Claims arising out of the bankruptcy or suspension of payment by any broker or dealer in securities. The Insolvency Exclusion applies inasmuch as the underlying Madoff Actions arise out of the bankruptcy or suspension of

payment by BLMIS, a failed brokerage firm which is the subject of a liquidation proceeding by the Securities Investor Protection Corporation.

6. The Insurers seek a declaration by the Court that the Policies do not afford coverage to Defendants for the Madoff Actions pursuant to the Insolvency Exclusion IV.(d).

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) as the aggregate amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of various States and citizens or subjects of a foreign state.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) as one or more of the Defendants reside in the District of Colorado.

## PARTIES

9. Plaintiff Aspen Insurance UK, Ltd. ("Aspen") is a corporation organized under the laws of England and Wales. Aspen's principal place of business is located at 30 Fenchurch Street in London, England. Aspen has a 33.334% subscription on a $15 million primary professional indemnity policy (Policy No. QA021508) ("Primary Policy") issued to certain of the defendants named in this action, and a 50% subscription on a $10 million excess policy (Excess Policy No. QA021608) ("Excess Policy").

10. Plaintiffs also include certain Underwriters at Lloyd's subscribing to the Primary Policy and Excess Policy, which Underwriters are identified below in Paragraphs (11) through (13) of this complaint.

11. Plaintiff Brit UW Ltd. ("Brit") is the sole subscribing member of Syndicate 2987 which subscribes 33.334% to the Primary Policy and 50% to the Excess Policy. Brit is organized under the laws of England and Wales with its principal office in London, England.

12. Plaintiff Chaucer Corporate Capital (No. 2) Limited ("Chaucer") is the sole subscribing member of Syndicate 1084 which subscribes 13.334% to the Primary Policy. Chaucer is organized under the laws of England and Wales with its principal office in London, England.

13. Plaintiff Antares Underwriting Limited ("Antares") is the sole subscribing member of Syndicate 1274 which subscribes 20% to the Primary Policy. Antares is organized under the laws of England and Wales with its principal office in London, England.

14. Plaintiffs Brit, Chaucer, Antares, along with Aspen, shall be collectively referred to hereinafter as "Underwriters."

15. Defendant Fiserv, Inc. (or "Fiserv") is a corporation organized under the laws of the State of Wisconsin with its principal place of business in Brookfield, Wisconsin. Fiserv transacts business in this District through its various subsidiaries. Fiserv is a publicly traded company listed on the NASDAQ exchange under the ticker symbol FISV. Upon information and belief, Fiserv is or was the parent company of FTC and Trust Industrial Bank. Fiserv is a defendant in the underlying Madoff Actions. Fiserv is a Named Insured under the Policies only when it is named as a co-defendant in a claim against FTC, and only for the vicarious liability of Fiserv arising from the alleged wrongful acts of FTC.

16. Defendant Fiserv Trust Company (FTC) (formerly known as First Trust Corporation) is a chartered trust company organized and licensed under the laws of the State of

4

Colorado. FTC's principal place of business is located in Denver, Colorado. Upon information and belief, FTC was a wholly-owned subsidiary of Fiserv until February 4, 2008, at which time TD Ameritrade Online Holdings Corp. acquired all of the outstanding capital stock of FTC from Fiserv. FTC is a defendant in the underlying Madoff Actions. FTC is a Named Insured under the Policies.

17. Upon information and belief, defendant Trust Industrial Bank ("TIB") is a corporation organized and licensed under the laws of the State of Colorado, and a wholly-owned subsidiary of Fiserv. TIB's principal place of business is located in Denver, Colorado. TIB is a defendant in the underlying Madoff Actions. TIB is a Named Insured under the Policies.

18. Defendant TD Ameritrade Online Holdings Corp. ("TD Online") is a corporation organized under the laws of the State of Delaware and domiciled in Omaha, Nebraska. Upon information and belief, TD Ameritrade acquired all of FTC's outstanding capital stock from Fiserv in a transaction that closed on February 4, 2008. TD Online is a defendant in the underlying Madoff Actions.

19. Defendant TD Ameritrade Holding Corporation ("TD Ameritrade") is a corporation organized under the laws of the State of Delaware. TD Ameritrade's principal place of business is located in Omaha, Nebraska. TD Ameritrade is publicly listed on the NASDAQ exchange under the ticker symbol AMTD. Upon information and belief, TD Ameritrade is the parent company and sole owner of TD Online. TD Ameritrade is a defendant in the underlying Madoff Actions. TD Ameritrade is an additional Insured under the subject Policies in limited circumstances.

20. Upon information and belief, defendant Robert Beriault Holdings, Inc. ("RBH") is a corporation organized and licensed under the laws of the State of Colorado. RBH's principal place of business is Denver, Colorado. RBH is wholly-owned by Robert Beriault, a Fiserv officer. RBH is named as a defendant in the underlying Madoff Actions. RBH is not a Named Insured under the Policies.

21. Upon information and belief, defendant Lincoln Trust Company ("LTC") is a corporation organized and licensed under the laws of the State of Colorado and a wholly-owned subsidiary of Fiserv. LTC's principal place of business is located in Denver, Colorado. LTC was formerly TIB, until November 3, 2008 when TIB changed its name to LTC. LTC is named as a defendant in the underlying Madoff Actions. LTC is not a Named Insured under the Policies.

22. Upon information and belief, defendant NTC & Co., LLP ("NTC") is a limited liability partnership organized under the laws of the State of Colorado and a wholly-owned subsidiary of Fiserv. NTC's principal place of business is located in Denver, Colorado. NTC is named as a defendant in the underlying Madoff Actions. NTC is not a Named Insured under the Policies.

**FACTUAL ALLEGATIONS**

**A.    Madoff Ponzi Scheme**

23. Madoff is a former Chairman of the NASDAQ stock exchange and the founder of BMLIS, a securities broker dealer that operated in the United States and internationally.

24. On December 11, 2008, Madoff was arrested by the FBI and charged with securities fraud by federal prosecutors, after he confessed that his business was "one big lie" and "basically, a giant Ponzi scheme."

25. Also, on December 11, 2008, the United States Securities and Exchange Commission ("SEC") filed a complaint against Madoff and BLMIS in the United States District Court for the Southern District of New York in an "emergency action to halt ongoing fraudulent offerings of securities and investment advisory fraud by Madoff and BMIS, a broker dealer and investment adviser registered with the Commission."

26. On December 15, 2008, the Securities Investor Protection Corporation ("SIPC") filed an Application with the United States District Court for the Southern District of New York seeking (i) a protective decree that the customers of BLMIS are in need of the protections afforded under the Securities Investor Protection Act of 1970 ("SIPA"), and (ii) seeking appointment of a trustee for the liquidation of BLMIS.

27. In its Application, SIPC explained the role of the SIPA statute which "was enacted in the wake of numerous failures of broker-dealer firms in the late 1960s:"

> SIPA created a program with the following purposes:
>
> To protect individual investors from financial hardship; to insulate the economy from the disruption which can follow the failure of major financial institutions; and to achieve a general upgrading of financial responsibility requirements of brokers and dealers to eliminate, to the maximum extent possible, the risks which leads to customer loss.
>
> SIPA accomplished these purposes essentially by two methods. First, it enhanced the power of the United States Securities and Exchange Commission ("Commission") to establish financial responsibility rules for brokers and dealers and to impose on the self-regulatory organizations requirements for the financial

> examination of their members. Second, it created SIPC and empowered it to commence proceedings for the liquidation of its members whose financial condition posed the threat of loss to their customers.
>
> *****
>
> A proceeding under SIPA is a liquidation proceeding. The trustee has the same powers and title with respect to the broker-dealer and its property as a trustee in bankruptcy, including the right to avoid preference.

28. SIPC is a U.S. investor's first line of defense in the event a brokerage firm fails owing customers cash and securities that are missing from customer accounts. SIPC either acts as a trustee or works with an independent court-appointed trustee in a brokerage insolvency case to recover funds for investors. SIPC maintains a special reserve fund authorized by Congress to help investors at failed brokerage firms.

29. On December 15, 2008, the New York District Court issued an order granting the Application of SIPC:

> On the Complaint and Application of the Securities Investor Protection Corporation ("SIPC"), it is hereby:
>
> I. ORDERED, ADJUGED and DECREED that the customers of Defendant Bernard L. Madoff Investment Securities LLC, are in need of the protection afforded by the Securities Investor Protection Act of 1970, as amended (SIPA, 15 U.S.C. § 78aaa *et seq*.)
>
> II. ORDERED that pursuant to 15 U.S.C. § 78eee(b)(3), Irving H. Picard, Esquire is appointed trustee for the liquidation of the business of the Defendant [BLMIS] with all the duties and powers of a trustee as prescribed in SIPA, and the law firm of Baker & Hostetler LLP is appointed counsel for the trustee.

30. On March 12, 2009, Madoff pled guilty to 11 federal offenses including securities fraud, wire and mail fraud, money laundering, perjury, and making false filings with the SEC.

8

31. On June 29, 2009, federal U.S. District Judge Denny Chin sentenced Madoff to the maximum of 150 years in prison, citing Madoff's crimes as an "extraordinarily evil" . . . "bloodless financial crime" . . . that "takes a staggering human toll" and shook confidence in the U.S. financial system.

**B.  The Underlying Madoff Actions Against Fiserv**

32. Within a week after Madoff pled guilty to his massive Ponzi scheme, investors began filing lawsuits against the Fiserv defendants named in this action seeking to recover nearly $1 billion in funds held in 800 IRA accounts entrusted with the Fiserv entities and invested with Madoff and BLMIS.

33. To date, at least four class actions complaints have been filed against the Fiserv defendants named in this action, including: (1) *Max Rutman v. Fiserv, et al.*, Case No. 09-cv-01222 filed on May 27, 2009 in the District of Colorado (copy of the Rutman complaint is attached as **Exhibit A**); (2) *Eric Weinstein v. Fiserv, et al*., Case No. 09-cv-00752 filed on April 2, 2009 in the District of Colorado (a copy of the Weinstein amended complaint is attached hereto as **Exhibit B**); (3) *Cohen v. Fiserv, et al.*, Case No. 09-1356 filed on June 10, 2009 in the District of Colorado (a copy of the Cohen complaint is attached hereto as **Exhibit C**); and (4) *Squires v. Fiserv, et al.*, Docket No. ESXL-2381-09 filed on March 19, 2009 in the Superior Court of New Jersey (a copy of the Squires complaint is attached hereto as **Exhibit D**) (collectively, the "Class Actions").

34. On June 17, 2009, Richard A. Guggenheimer, Cathleen A. Lieberman and Norma Shapiro filed a Demand for Arbitration and Statement of Claims with the American Arbitration

9

Association against certain of the Defendants in this action (the "Guggenheimer Arbitration"). (A copy of the Guggenheimer Demand for Arbitration is attached hereto as **Exhibit E**).

35. Plaintiffs in the underlying Class Actions and Guggenheimer Arbitration (collectively, the Madoff Actions) held IRA accounts, for which various Fiserv entities served as custodial trustee, that were invested with BLMIS. (*See* Ex. B - Weinstein Complaint, ¶1; *see also* Ex. A - Rutman Complaint, ¶30; Ex. C - Cohen Complaint, ¶¶2, 63; Ex. D - Squires Complaint, ¶59; Ex. E - Guggenheimer Demand, ¶1.)

36. Since the late 1990s, Fiserv, its subsidiaries and affiliates (collectively, the "Fiserv entities") served as the custodial trustee for IRA accounts invested with BLMIS, including the IRA accounts of the plaintiffs in the underlying Madoff Actions. (*See* Ex. B - Weinstein Complaint, ¶4; *see also* Ex. A - Rutman Complaint, ¶¶3, 30, 35, 45; Ex. C - Cohen Complaint, ¶4; Ex. D - Squires Complaint, ¶3.)

37. According to the BLMIS client roster, at the time Madoff's Ponzi scheme was revealed, the Fiserv entities served as the custodial trustee for approximately 800 IRA accounts invested with BLMIS. (*See* Ex. C - Cohen Complaint, ¶35; *see also* Ex. E - Guggenheimer Demand, ¶14.)

38. Plaintiffs in the underlying Madoff Actions allege that the Fiserv entities breached their duties as custodian, in part, by: failing to hold and safeguard the assets in the IRA accounts; allowing Madoff to convert and commingle the trust res in the IRA accounts invested with BLMIS; ignoring numerous warning signs or "red flags" that should have placed the Fiserv entities on notice of Madoff's Ponzi scheme; and sending out inaccurate account statements (*See* Ex. B - Weinstein Complaint, ¶8; *see also* Ex. A - Rutman Complaint, ¶¶8, 53-54, 125; Ex. C -

Cohen Complaint, ¶¶6, 43, 46, 55; Ex. D - Squires Complaint, ¶¶26, 76; Ex. E - Guggenheimer Demand, ¶¶4, 36, 38, 39, 46, 49.)

39. Plaintiffs in the underlying Madoff Actions assert various claims against the Fiserv entities with respect to their role as custodial trustee for IRA accounts invested with BLMIS, including claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, unjust enrichment and restitution, and negligence. (*See* Ex. B - Weinstein Complaint, Ex. A - Rutman Complaint, Ex. C - Cohen Complaint, Ex. D - Squires Complaint.)

40. Plaintiffs in the underlying Madoff Actions seek monetary damages and other relief for their purported injuries caused by the breaches of duty by the Fiserv entities.

41. On or about May 28, 2009, the Fiserv defendants filed a motion to dismiss the Weinstein amended complaint.

42. In the motion to dismiss, Fiserv acknowledged that it invested IRA monies with BLMIS, at the direction of the IRA account holders:

> These charges are made despite the fact [the Fiserv] Defendants did precisely what Weinstein and other named Plaintiffs directed be done – invest their IRA monies with Bernard L. Madoff Investment Securities ("BMIS") – and violated none of the limited duties assumed by the custodian of their IRAs.
>
> *****
>
> A "Bernard L. Madoff Brkg Acct Value" was reported to each of the named Plaintiffs in their Account Statements under the "Brokerage Accounts" category. . . .  As quoted above, [the Fiserv] Defendants repeatedly and expressly disclosed to Plaintiffs that their assets listed under the "Brokerage Accounts" category – including "Bernard L. Madoff Brkg Account Value" – were "<u>held by</u>" the brokerage firm.  (emphasis in original)

11

43. Upon information and belief, the Squires case has been dismissed.

44. Upon information and belief, the Guggenheimer Arbitration has been temporarily stayed.

45. The Weinstein, Rutman, and Cohen class action lawsuits have been consolidated. A copy of the Consolidated Complaint filed on November 6, 2009, Lead Case No. 09-cv-00752-CMA-CBS filed in the United States District Court for the District of Colorado (the "Consolidated Fiserv Action") is attached hereto as **Exhibit F**.

46. The proposed Class is defined in the Consolidated Complaint as:

> All persons for whom the Fiserv Defendants opened IRA or pension accounts of any kind which invested with Bernard Madoff or his companies through December 11, 2008. Excluded from the Class are: Defendants, any judge or judicial officer who may hear any aspect of this case (and his or her law clerks), and any person, firm, trust, corporation, or other entity related to or affiliated with any of Defendants, Bernard Madoff Investment Securities, LLC ("BMIS"), Bernard Madoff, or any other member of the Madoff family. (Ex. F – Consolidated Complaint, ¶227)

47. Plaintiffs in the underlying Madoff Actions have sued the Fiserv defendants for damages arising out of the fraud perpetrated against them by BLMIS.

**C.    The Policies**

48. Plaintiff Insurers issued a $15 million Primary Policy (attached hereto as **Exhibit G**). Subject to its terms, conditions, endorsements, and exclusions, the Primary Policy affords coverage to certain Fiserv Insureds for a covered Claim first made against the Insureds during the Policy Period effective from April 27, 2008 to April 27, 2009.

49. The Policies are not "duty to defend" policies, and the Declarations Page of the Primary Policy states in bold:

> NOTICE: THIS IS A CLAIMS MADE POLICY. THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE UNDERWRITER DURING THE POLICY PERIOD. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.
>
> NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.
>
> NOTICE: THE UNDERWRITER DOES NOT ASSUME ANY DUTY TO DEFEND. HOWEVER, THE UNDERWRITER MAY ADVANCE DEFENSE COSTS PAYMENTS PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

(*See* Exhibit G: Page 38, Section Two of Primary Policy for Bankers Professional Liability.)

50. The Insuring Clause of the Primary Policy states:

> I. Insuring Agreement
>
> This policy shall reimburse of [sic] the Insured arising from a Claim first made against the Insured and reported in writing to the Underwriter during the Policy Period or the Discovery Period (if applicable) for any Wrongful Act of the Insured or any other person for whose actions the Insured is legally responsible in rendering or failing to render Professional Services, but only if such Wrongful Act occurs before the end of the Policy Period. The Underwriter may in its absolute discretion pursuant to Clause V(E) first paragraph advance Defense Costs prior to the final disposition of a Claim.

(*See* Exhibit G: Page 39, Section Two of Primary Policy for Bankers Professional Liability.)

51. As reflected in Item 1 of the Declarations Page of the Primary Policy, the Named Insureds are:

> **Item 1. Named Insured**: Fiserv Trust Company (FTC) (formerly known as First Trust Corporation), Fiserv Affinity, Inc.

>    (Affinity), Trust Industrial Bank (T.I.B.), Aspen Investment Alliance (ASPEN) and Smart 401(k) Plan (Smart Plan).

(*See* Exhibit G:  Page 38, Section Two of Primary Policy for Bankers Professional Liability.)

      52.    In addition to the Named Insureds, the Fiserv Insureds also include (i) any Subsidiary of a Named Insured, including any corporation of which a Named Insured owns more than 50% of the issued and outstanding voting stock as of the policy inception date; (ii) any partner, officer, director, trustee or employee of a Named Insured or Subsidiary; (iii) TD Ameritrade to the extent it is named as a co-defendant, but only with respect to Claims first made against TD Ameritrade during the Policy Period for Wrongful Acts committed or allegedly committed by a Fiserv Insured, exclusive of the co-defendants; and (iv) Fiserv when it is named as a co-defendant in a claim against FTC, but only for the vicarious liability of Fiserv arising from the alleged wrongful acts of FTC.  (*See* Exhibit G:  definition of "Insureds" at Page 40, Clause II.(f); definition of "Subsidiary" at Page 41, Clause II.(j) of Section Two of Primary Policy; and Endorsement No. 1 adding TD Ameritrade and Fiserv as Insureds for limited purposes.)

      53.    Exclusion IV.(d) of the Primary Policy states:

> The Underwriter shall not be liable to reimburse the Insureds for Damages in connection with any Claim:
>
> (d)    *arising out of the bankruptcy of, or suspension of payment by, any broker or dealer in securities* or commodities, or any bank or banking firm other than the Company [the Named Insureds]; Provided, however, that this exclusion shall not apply to an investment by or on behalf of the Insured in such an entity. (emphasis added)

(*See* Exhibit G:  Exclusion IV.(d) at Page 42. of Section Two of Primary Policy.)

      54.    The definition of Damages at Clause II.(d) of the Primary Policy means:

> *"Damages" shall mean judgments and settlements negotiated with the assistance and approval of the Underwriter, together with any Defense Costs*; provided, however, the Damages shall not include civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes, or any amount for which an Insured is not financially liable or which is without legal recourse to an Insured or matters which may be deemed uninsurable under the law pursuant to which this policy is construed; notwithstanding the foregoing, Damages shall include awards of punitive or exemplary damages, such award shall be part of and not in addition to the Limit of Liability as stated in Item 3 of the Declarations. (emphasis added)

(*See* Exhibit G:  Clause II.(d) at Page 39 of Section Two of Primary Policy.)

55. In addition to the Primary Policy, Aspen and Brit issued an Excess Policy (attached hereto as **Exhibit H**).  Subject to its terms, conditions, endorsements, and exclusions, the Excess Policy affords a $10 million aggregate Limit of Liability excess of the $15 million Primary Policy.  Unless otherwise noted, the Excess Policy adopts the same terms, conditions, endorsements, and exclusions as the Primary Policy including, but not limited to, Exclusion IV.(d) of the Primary Policy which is highlighted above.

56. On November 10, 2009, Underwriters issued a letter to Defendants' counsel, Sherman & Howard, denying coverage for the Madoff Actions pursuant to the Insolvency Exclusion in the Policies.  Defendants have not responded to Underwriters' denial of coverage.  (A copy of the denial letter is attached hereto as **Exhibit I**.)

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment (Insolvency Exclusion Bars Coverage)

57. The Insurers repeat and re-allege each and every allegation set forth in Paragraphs 1 through 56 of this complaint as if the same were fully set forth herein.

58. This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

59. An actual case and controversy exists between the parties that may be adjudicated by this Court consistent with U.S. Constitution, Article III, § 2, cl.1.

60. Defendants are seeking coverage for the Madoff Actions under the Primary Policy and the Excess Policy including, but not limited to, advancement of Defense Costs.

61. The Insolvency Exclusion IV.(d) of the Primary Policy bars coverage for any Claim arising out of the bankruptcy of, or suspension of payment by, any broker or dealer in securities or commodities.

62. Fiserv has admitted in other court filings in this District Court that certain of the Fiserv defendants invested their customers' IRA account funds with BLMIS.

63. BLMIS is an insolvent broker or dealer in securities.

64. A trustee has been appointed by a federal district court to oversee the liquidation of BLMIS pursuant to SIPA which was designed to protect investors for losses stemming from a failed broker or dealer.

65. The underlying Madoff Actions, including the Consolidated Complaint, against the Fiserv Insureds arise out of the bankruptcy of, or suspension of payment by, BLMIS which is a broker or dealer in securities.

66. An actual and justiciable controversy presently exists between the Insurers and the Defendants concerning the Insurers' obligation to advance defense costs and pay damages, judgments, or settlements for the underlying Madoff Actions.

## SECOND CLAIM FOR RELIEF

### Declaratory Judgment (Certain Defendants are not Insureds)

67. The Insurers repeat and re-allege each and every allegation set forth in Paragraphs 1 through 66 of this complaint as if the same were fully set forth herein.

68. This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

69. An actual case and controversy exists between the parties that may be adjudicated by this Court consistent with U.S. Constitution, Article III, § 2, cl.1.

70. Upon information and belief, each of the Defendants named in this action is seeking coverage for the Madoff Actions under the Primary Policy and the Excess Policy.

71. Defendant Robert Beriault Holdings, Inc. is not a Named Insured under the Policies or a Subsidiary of a Named Insured.

72. Defendant Lincoln Trust Company is not a Named Insured under the Policies or a Subsidiary of a Named Insured.

73. Defendant NTC & Co. is not a Named Insured under the Policies or a Subsidiary of a Named Insured.

## THIRD CLAIM FOR RELIEF

### Declaratory Judgment (Fee Exclusion)

74. The Insurers repeat and re-allege each and every allegation set forth in Paragraphs 1 through 73 of this complaint as if the same were fully set forth herein.

75. This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

76. An actual case and controversy exists between the parties that may be adjudicated by this Court consistent with U.S. Constitution, Article III, § 2, cl.1.

77. The Fee Exclusion IV.(h) applies to Claims "for the reimbursement of fees, commissions, costs or other charge paid or payable to any of the Insureds, or based upon allegations against any of the Insureds for excessive fees, commissions, costs or other charges."

78. Plaintiffs in the underlying Madoff Actions contend that Fiserv collected up to $25 million in fees for serving as custodian of the IRAs.

79. To the extent plaintiffs in the underlying Madoff Actions are seeking the return of any fees, commissions, or other amounts paid or payable to any Fiserv Insured, the Fee Exclusion applies.

### Request for Relief

WHEREFORE, the Insurers respectfully seek a judgment by the Court as follows:

A. A declaratory judgment that the Insolvency Exclusion IV.(d) bars coverage for any and all amounts incurred by the Fiserv Insureds in connection with the underlying Madoff Actions, and that the Insurers have no obligation to pay or advance any Defense Costs or pay Damages under the subject Policies;

B. A declaratory judgment that Robert Beriault Holdings, Inc., Lincoln Trust Company, and NTC & Co. are not Insureds and are not entitled to coverage for Defense Costs or Damages under the subject Policies;

C. A declaratory judgment that the Fee Exclusion IV.(h) bars coverage for the reimbursement of fees, commissions, costs or other charges paid or payable to any of the Fiserv Insureds;

D.     A declaratory judgment by the Court that the Fraud and Profit Exclusion IV.(a) bars coverage for any claims against the Fiserv Insureds for unjust enrichment and/or restitution; and

E.     Such other relief as this Court deems just and proper.

Dated November 25, 2009            Respectfully submitted by,

s/ Michael J. Carrigan
Michael J. Carrigan
Joe A. Ramirez
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Post Office Box 8749
Denver, Colorado  80201-8749
Phone: (303) 295-8314
Fax: (303) 975-5489
mcarrigan@hollandhart.com
jramirez@hollandhart.com

**Attorneys For Plaintiffs**
**ASPEN INSURANCE U.K. LTD. and**
**Those Underwriters at Lloyd's subscribing to**
**Policy Nos. QA021508 and QA021608**

**Plaintiff's Address:**
30 Fenchurch Street
London, England