**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-02770-CMA-CBS

ASPEN INSURANCE UK, LTD., and
CERTAIN UNDERWRITERS AT LLOYD'S
Subscribing to Policy No. QA021508 and
Policy No. QA021608,

    Plaintiffs/Counterclaim Defendants,

v.

FISERV, INC.,
FISERV TRUST COMPANY (f/k/a FIRST TRUST CORPORATION),
TRUST INDUSTRIAL BANK,
TD AMERITRADE ONLINE HOLDINGS CORP.
TD AMERITRADE HOLDING CORPORATION,

    Defendants/Counterclaimants,

And

ROBERT BERIAULT HOLDINGS, INC.,
LINCOLN TRUST COMPANY, and
NTC & CO., LLP,

Defendants.

---

**ORDER GRANTING DEFENDANTS'/COUNTERCLAIMANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DENYING AS PREMATURE PLAINTIFFS'
CROSS MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on cross-motions for summary judgment filed by the parties.  On February 5, 2010, Defendants/Counterclaimants Fiserv, Inc., First Trust Company, Trust Industrial Bank, TD Ameritrade Online Holdings Corp., and TD Ameritrade Holding Corporation ("Defendants") filed a Motion and Supporting Declaration for Partial Summary Judgment that Plaintiffs Must Advance Defense Costs Contemporaneously, pursuant to the terms of a Bankers Professional Liability Policy ("Policy") issued by Plaintiffs.[1]  (Doc. ## 24, 25.)  On March 9, 2010, Plaintiffs/ Counterclaim Defendants Aspen Insurance UK, Ltd. and Certain Underwriters at Lloyd's Subscribing to Policy No. QA021508 and Policy No. QA21608 ("Plaintiffs") responded. (Doc. # 38.)  Defendants replied on March 30, 2010.  (Doc. #47).  Plaintiffs

---

[1]  On February 8, 2010, Defendants filed a Motion to Stay All Proceedings Except as to Whether Plaintiffs Have A Duty to Advance Defense Costs Contemporaneously.  (Doc. # 26.) Defendants contended that pursuing all other claims and counterclaims, particularly those concerning the duty to indemnify at this juncture would prejudice them because a duty to indemnify requires a determination as to whether the actual facts of the underlying actions fall within the scope of the Policy.  (*Id.* at 26.)  On March 1, 2010, United States Magistrate Judge Craig B. Shaffer granted Defendants' Motion to Stay via Minute Order, staying this matter pending a ruling as to the issue of advancing defense costs contemporaneously.  (Doc. # 34.)

As set forth in the Amended Complaint (Doc. # 35), Plaintiffs asserted claims seeking a declaratory judgment that (1) they have no duty to pay or advance any defense costs or pay damages under the subject policies; (2) that certain Defendants, namely Robert Beriault Holdings, Inc., Lincoln Trust Company, and NTC & Co. are not Insureds under the policy and, therefore, are not entitled to coverage for defense costs or damages under the Policy; (3) that the fee exclusion bars coverage for the reimbursement of fees, commissions, costs or other charges paid or payable to any of the Insureds; and (4) that the Policy bars coverage for any claims against the Insureds for unjust enrichment and/or restitution.  As set forth in the Amended Answer and Counterclaims (Doc. # 41), Defendants asserted counterclaims for breach of contract, unreasonable delay and denial of insurance benefits, and bad faith breach of contract, all of which arise from the purported duty to advance defense costs.

subsequently filed a Sur-Reply (Doc. # 56) and Defendants filed a Supplemental Reply Brief (Doc. # 59).[2]

During the pendency of Defendants' Motion for Partial Summary Judgment, Plaintiffs filed a Cross Motion for Summary Judgment that Plaintiffs Did Not Have Duty to Indemnify. (Doc. # 43). Defendants responded on April 2, 2010 (Doc. # 50), and Plaintiffs replied on April 16, 2010 (Doc. # 51). For the reasons discussed below, Defendants' Motion for Partial Summary Judgment is granted and Plaintiffs' Cross Motion for Summary Judgment is denied as premature.

## I.  FACTUAL BACKGROUND

The instant dispute, a declaratory judgment action, concerns Plaintiffs' obligations to advance defense costs and to indemnify Defendants, pursuant to the terms of a Bankers Professional Liability Policy ("Policy") that Plaintiffs issued to Defendant Fiserv Trust Company ("FTC"), Trust Industrial Bank, and others. The question of Plaintiffs' duties to advance defense costs and indemnify arises from at least four class action lawsuits and two arbitration proceedings (the "Underlying Actions")[3]

---

[2] More recently, in this hotly-contested dispute, Defendants filed a Notice of Supplemental Authority (Doc. # 63), to which Plaintiffs objected (Doc. # 64) and Defendants replied (Doc. # 65).

[3] At the time the original complaint was filed, the following class action lawsuits were pending: (1) *Max Rutman v. Fiserv*, Case No. 09-cv-01222 (D. Colo.), (2) *Eric Weinstein v. Fiserv*, Case No. 09-cv-00752 (D. Colo.), (3) *Cohen v. Fiserv*, Case No. 09-cv-01356 (D. Colo.) (n/k/a *Mandelbaum v. Fiserv*), and (4) *Squires v. Fiserv*, Case No. ESXL-2381-09 (N.J. Super. Ct.). Also at that time, a demand for arbitration was filed with the American Arbitration Association ("AAA") by Richard A. Guggenheimer, Cathleen A. Lieberman, and Norman Shapiro. (*See* Complaint, Exs. A-D, Doc. ##1-1 through 1-4).

brought against Defendants by various holders of self-directed individual retirement accounts ("IRAs") that Defendants administered. At the direction of Defendants' customers, the IRA funds were invested with Bernard Madoff's failed and insolvent brokerage firm, Bernard L. Madoff Investment Securities, LLC ("BLMIS"). The plaintiffs in the Underlying Actions allege in part that the instant Defendants breached their duties as custodial trustees of their self-directed IRAs, which breach resulted in the ultimate loss of their IRA funds.

The instant Plaintiffs have denied Defendants' requests to advance defense costs arising from the Underlying Actions, pursuant to certain exclusions in the Policy. The Policy's core provision states as follows:

> I. INSURING AGREEMENT
>
> This policy shall reimburse [ ] the Insured arising from a Claim first made against the Insured and reported in writing to the Underwriter during the Policy Period . . . for any Wrongful Act of the Insured or any other person for whose actions the Insured is legally responsible in rendering or failing to render Professional Services, but only if such Wrongful Act occurs before the end of the Policy Period. The Underwriter may in its absolute discretion pursuant to Clause V(E) first paragraph advance Defense Costs prior to the final disposition of a Claim.

(Doc. #1-7 at 44, Section I).

---

On June 30, 2009, the *Rutman*, *Weinstein*, and *Mandelbaum* class actions were consolidated under Case No. 09-cv-00752 (the "Consolidated Class Actions").

On January 19, 2010, a demand for arbitration was filed with the AAA by Stephen Z. Kaufman. (*See* Amended Compl., Ex. J, Doc. #36).

In pertinent part, the Policy sets forth the following definitions:

- "Defense Costs" are "reasonable and necessary fees, costs and expenses consented to by the Underwriter . . . resulting solely from the investigation, adjustment defense and appeal of any Claim against an Insured[.]" (*Id.* at Section II(c)).

- "Damages" are defined as "judgements [sic] and settlements negotiated with the assistance and approval of the Underwriter, together with any Defense Costs . . ." (*Id.* at Section II(d)).

- "Professional Services" are defined as "activities . . . provided by the Insured which are performed for or on behalf of any client or customer of the Company and which are declared in the application." (*Id.* at Section II(h)).

- "Wrongful Act" is defined as "any actual or alleged error or omission in the rendering of or failure to render one or more of the Professional Services[.]" (*Id.* at Section II(k)).

Also in pertinent part, the Policy contains the following exclusions:

IV.     EXCLUSIONS

The Underwriter shall not be liable to reimburse the Insureds for Damages in connection with any Claim:

\*     \*     \*

(a)   arising out of or alleging any criminal, malicious, dishonest or fraudulent act error or omission of any Insured or any other person for whose actions an Insured is legally responsible; or arising out of or alleging any conflict of interest, acting in bad faith or gaining or any profit or advantage to which an Insured (or any other person for whose actions as an Insured is legally responsible) was not legally entitled; however, the Underwriter shall advance defense costs to the Insured for all Defense Costs reasonably incurred by the Insured in connection therewith until if and when such allegations are subsequently proven by final adjudication against the Insured.

\*     \*     \*

    (d)    arising out of the bankruptcy of, or suspension of payment by, any broker or dealer in securities or commodities, or any bank or banking firm other than the Company; Provided, however, that this exclusion shall not apply to any investment by or on behalf of the insured in such an entity.

*  *  *

    (h)    for the reimbursement of fees, commissions, costs or other charges paid or payable to any of the Insureds, or based upon allegations against any of the Insureds for excessive fees, commissions, costs or other charges;

*  *  *

(Doc. # 1-7 at 47-48.)

With respect to the duties to defend and advance defense costs, the Policy states as follows:

> V(E).  DEFENSE COSTS, SETTLEMENTS AND JUDGMENTS
> (INCLUDING ADVANCEMENT OF DEFENSE COSTS)
>
> The Underwriter shall advance, at the written request of the Insured, Defense Costs prior to the final disposition of the Claim. Such advance payment by the Underwriter shall be repaid to the Underwriter by the Insured, severally according to their respective interests, in the event and to the extent that the Insured shall not be entitled under the terms and conditions of this policy to payment of such Loss.
>
> The Underwriter does not, however, under this policy, assume any duty to defend. The Insureds shall defend and contest any Claim made against them. The Insureds shall not admit or assume any liability, enter into any settlement agreement[,] stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Underwriter. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Underwriter shall be recoverable as Loss under the terms of this policy. The Underwriter's consent shall not be unreasonably withheld, provided that the Underwriter shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim.

(Doc. #1-7 at 51).

## II. STANDARD OF REVIEW

Partial summary judgment is appropriate where the moving party demonstrates there are no genuine issues of material fact and the party is entitled to judgment as a matter of law as to a specific claim. Fed. R. Civ. P. 56(a), (c). Like any written contract, the interpretation of an insurance policy presents a question of law appropriate for resolution by summary judgment. *Signature Dev. Cos., Inc. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1218 (10th Cir. 2000); *see also Am. Econ. Ins. Co. v. Schoolcraft*, 551 F. Supp. 2d 1235, 1239 (D. Colo. 2007). This rule applies to the interpretation of an insurance policy to determine an insurer's duty to advance defense costs or pay defense costs as they are incurred. *See, e.g.*, *Blackhawk-Central City Sanitation Dist. v. Am. Guarantee & Liab. Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000); *Fight Against Coercive Tactics Network, Inc. v. Coregis Ins. Co.*, 926 F. Supp. 1426, 1429-34 (D. Colo. 1996).

## III. ANALYSIS

### A. WHETHER PLAINTIFFS HAVE A DUTY TO ADVANCE DEFENSE COSTS

The parties dispute whether Plaintiffs have a duty to advance defense costs. Plaintiffs contend that they do not have a duty to advance defense costs because the claims asserted in the Underlying Actions arise out of BLMIS's bankruptcy or suspension of payment and the Underlying Actions include claims for unjust enrichment and/or restitution, situations for which the Policy explicitly excludes coverage. Naturally, Defendants disagree.

"[T]here are no material differences between a duty to defend and a duty to advance defense costs." *Julio & Sons Co. v. Travelers Cas. & Sur. Co. of Am.*, 591 F. Supp. 2d 651, 660 (S.D.N.Y. 2008). A duty to defend arises "from allegations in the complaint, which if sustained, would impose a liability covered by the policy." *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991). "When an insurer refuses to provide a defense to its insured, Colorado law requires the application of 'traditional duty to defend analysis to the underlying complaint to determine the insurer's duty to defend.'" *Schoolcraft*, 551 F. Supp. 2d at 1239 (quoting *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 829 (Colo. 2004)). This analysis involves a Four Corners review, pursuant to which courts look only to the four corners of the underlying complaint and the insurance policy to determine if the insurer's duty has been triggered. *See Hecla Mining Co.*, 811 P.2d at 1090. Accordingly, the Court will first look to the four corners of the complaints in the Underlying Actions and then construe the terms of the insurance policy. As stated in *Hecla*,

> In order to avoid policy coverage, an insurance policy must establish that the exemption claimed applies in the particular case, and that the exclusions are **not subject to any other reasonable interpretations**. The insurer has a duty to defend unless the insurer can establish that the allegations in the complaint are **solely and entirely** within the exclusions in the insurance policy. An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured.

*Hecla*, 811 P.2d at 1090 (internal citations omitted) (emphasis added); *see also Cotter Corp.*, 90 P.3d at 829. "Further, under Colorado law, if the underlying complaint asserts more than one claim, a duty to defend against all claims asserted arises if any one of

them is arguably a risk covered by the pertinent policy." *Blackhawk-Central City Sanitation Dist.*, 214 F.3d at 1189.  "An insurer seeking to avoid its duty to defend bears a heavy burden." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 297 (Colo. 2003).  The duty to defend must be construed "liberally with a view toward affording the greatest possible protection to the insured." *Id.*

      1.     <u>The Underlying Actions</u>

As noted above, the Underlying Actions were brought by various holders of self-directed IRAs that Defendants have administered and which IRA funds were invested with BLMIS and ultimately lost.  The plaintiffs in the Underlying Actions allege, in part, that Defendants in the instant action breached their duties as custodial trustees of the self-directed IRA accounts by (1) not providing "accurate" reports as to the value of the IRAs and failing to detect and report Madoff's theft of their money; and (2) failing to hold and prevent "commingling" of IRA assets.  Collectively, the various complaints and arbitration demands include claims for breach of contract, negligence/gross negligence, negligent misrepresentation, breach of fiduciary duty, aiding and abetting the breach of fiduciary duty, and unjust enrichment/restitution.  As part of the requested relief, these plaintiffs request "compensatory damages . . . for damages sustained as a result of Defendants' wrongdoing together with interest thereon" and discuss possible forfeiture of revenues and fees Defendants had collected.  (*See, e.g.*, Case No. 09-cv-00752, Doc. # 69 at 56, 58).  However, at no point do the complaints or arbitration demands use words such as "insolvency" or "bankruptcy" or allege any facts or assert any claims directly related to BLMIS's insolvency, bankruptcy, or liquidation.

> 2.  Whether the Policy's Exclusionary Provision Applies to the Duty to Advance Defense Costs

Rules governing the interpretation of contracts apply generally to insurance policies and courts "construe the terms of an insurance contract to promote the intent of the parties." *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059 (Colo. 2005). As further stated in *Anglum*,

> [T]he policy must be enforced as written unless there is an ambiguity in the policy language. A policy is ambiguous if it is susceptible on its face to more than one reasonable interpretation. In determining whether there is an ambiguity in a policy provision, we evaluate the policy as a whole, using the generally accepted meaning of the words employed. An ambiguity in the policy language is construed against the drafter and in favor of the insured.

119 P.3d at 1059-60. "A mere disagreement between the parties regarding the meaning of a policy term does not create an ambiguity." *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo. 1997)). As Plaintiffs duly recognize, "Courts should read the provisions of the policy as a whole, rather than reading them in isolation" and must "give effect to all provisions so that none will be rendered meaningless." *Cyprus Amax Minerals Co.*, 74 P.3d at 297, 307. "[A] more specific provision controls the effect of more general provisions in a contract." *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 825 (Colo. Ct. App. 2007). As the Colorado Court of Appeals further stated:

> Exclusionary clauses designed to except particular conduct or situations from general insurance coverage provisions must be drafted in clear and specific language. To benefit from an exclusionary clause, an insurer must establish that the exclusion applies and is not subject to any other reasonable interpretation.

> When interpreting policy provisions, our construction must be fair, natural, and reasonable rather than strained and strictly technical.

*Id.* at 824-25 (internal citations an quotations omitted).  "As an overarching principle, in construing a contract courts must also 'consider the subject matter, the object of making it, the sense in which the parties naturally understood it at the time it was made, and the purposes and objects to be accomplished thereby.'" *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (quoting *Total Petroleum, Inc. v. Farrar*, 787 P.2d 164, 167 (Colo. 1990)).

As noted above, the Policy's **sole** exclusionary provision states that the "Underwriter shall not be liable to **reimburse** the Insureds for Damages in connection with any Claim: . . . (a) arising out of or alleging any criminal, malicious, dishonest or fraudulent act error or omission . . . or arising out of or alleging any conflict of interest, acting in bad faith or [unlawfully] gaining or any profit or advantage . . . ;  (d) arising out of the bankruptcy of, or suspension of payment by, any broker or dealer in securities or commodities . . . ; (h) for the reimbursement of fees, commissions, costs or other charges paid or payable to any of the Insureds . . . ."  (Doc. # 1-7 at 47-48.)

The plain and ordinary meaning of "reimburse" is "to pay back (an equivalent for something taken, lost, or expended) to someone."  WEBSTER'S THIRD NEW INT'L DICTIONARY 1914 (2002).  Therefore, the Court concludes that this exclusionary provision concerns the duty to indemnify, which is the promise to reimburse another for a loss suffered because of a third party's act or default,[4] not the duty to advance

---

[4] BLACK'S LAW DICTIONARY 342 (2d pocket ed. 2001).

defense costs, which advance is analogous to a loan in the instant case, as discussed immediately below. *See*, *e.g.*, *Molnar v. Mittal Steel USA, Inc.*, No. 2:07-cv-241, 2010 WL 746757, at * 6 (N.D. Ind. March 1, 2010) ("In an indemnity agreement one party (the indemnitor) promises to **reimburse** another party (the indemnitee) for the indemnitee's loss, damage, or liability, thereby shifting the financial obligation to pay damages from the indemnitee to the indemnitor.") (emphasis added); *Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*, 596 F. Supp. 2d 1351, 1376 (E.D. Cal. 2009) ("a contractual promise to indemnify includes the promise to reimburse"); *Patton v. TPI Petroleum, Inc.*, 356 F. Supp. 2d 921, 927 (E.D. Ark. 2005) ("Indemnity or indemnification can mean simply reimbursement.") (original italics removed). Accordingly, this exclusionary provision does not absolve Plaintiffs of their duty to advance defense costs. Because the exclusionary provision does not apply to the duty to advance defense costs, the Court need not consider whether the Underlying Actions "arise out of" a "bankruptcy" or "insolvency" and need not decide whether the "four corners" rule, or any exceptions thereto, applies.

The Court also notes that the parties specifically contemplated a scenario in which Plaintiffs would advance defense costs and Defendants would later be deemed unentitled to such monies, pursuant to the Policy's terms and conditions. In such a scenario, the parties agreed that Defendants would repay the advanced amount. (*See* Doc. # 1-7 at 51, Clause V(E)) ("Such advance payment by the Underwriter shall be repaid to the Underwriter by the Insured, severally according to their respective

interests, in the event and to the extent that the Insured shall not be entitled under the terms and conditions of this policy to payment of such Loss.").[5]

### 3. Whether the Advancement of Defense Costs is in Plaintiffs Sole Discretion

Plaintiffs next assert that, even if the exclusionary provision does not apply to the duty to advance defense costs, advancing defense costs is within their sole discretion. (Doc. # 38 at 25-30.) However, upon applying the laws of contract construction, the Court disagrees.

As previously noted, the first section of the Policy states, "The Underwriter **may** in its absolute discretion **pursuant to Clause V(E)** first paragraph advance Defense Costs prior to the final disposition of a Claim."[6] (Doc. # 1-7 at 44, Section I) (emphasis added). While this provision suggests that the advancement of defense costs is at the Underwriter's option, the first paragraph of Clause V(E) suggests otherwise. Notably, Clause V(E) states that the Underwriter "**shall advance**, at the **written request of the Insured**, Defense Costs prior to the final disposition of the Claim." (Doc. # 1-7 at 51) (emphasis added). Additionally, Section IV(a) explicitly states that "the Underwriter **shall advance** defense costs to the Insured for all Defense Costs reasonably incurred by the Insured in connection" with claims arising from [any fraudulent acts, errors, or omissions, or bad faith. (*Id.* at 47) (emphasis added). The use of "shall" creates an

---

[5] The instant case is distinguishable from *Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*, 636 F. Supp. 2d 995 (C.D. Cal. 2009), a case cited by Plaintiffs, because in *Jeff Tracy*, the parties did not contemplate the mandatory advancement of defense costs.

[6] A provision that suggests the discretionary nature of the advancement of defense costs also appears on the first page of the Policy. (Doc. # 1-7 at 43) ("The Underwriter may advance defense costs payments prior to the final disposition of a claim.")

obligation and denotes mandatory compliance.  *See Magenis v. Bruner*, 187 P.3d 1222, 1225 (Colo. Ct. App. 2008); *People v. Steinbeck*, 186 P.3d 54, 57 (Colo. Ct. App. 2007). Accordingly, the plain and ordinary meaning of the words in Clause V(E) indicate that the advancement of defense costs is mandatory, provided that the Insured has submitted a written request.  The discretionary component of the Underwriter's advancement of defense costs contained within Clause V(E) refers to situations where the Insured did not submit a prior written request.  The parties do not dispute that Defendants timely notified Plaintiffs of the Underlying Actions.  (*See* Denial of Coverage Letters at Doc. # 1-9 and # 37).  This interpretation "give[s] effect to all [the Policy's] provisions so that none will be rendered meaningless[.]"  *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 307 (Colo. 2003) (citations omitted).

    4.    <u>Whether the Advancement of Defense Costs is Conditioned Upon Consent</u>

Plaintiffs also assert that they need not advance defense costs, unless the Insureds obtained prior consent before incurring certain costs.  (Doc. # 38 at 27.) However, this argument directly contradicts the plain and ordinary meaning of the Policy's terms.  Specifically, Clause V(E) of the Policy states, "Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Underwriter shall be **recoverable** as Loss under the terms of this policy."  (*Id.*) (emphasis added).  By its very definition, the word "recoverable" relates to the duty to indemnify, <u>not</u> the duty to advance defense costs.  *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1898 ("recoverable": "capable of being recovered"; "recover": "to make good

the loss, injury, or cost"). Therefore, in order to obtain an advance on defense costs, Defendants need not obtain prior consent, they simply need to submit a written request for an advance.

     5.     <u>Whether Defense Costs Must Be Advanced As They Are Incurred</u>

Defendants contend that, where an insurer has a duty to advance defense costs, Defendants advancement of costs must be on a contemporaneous, as-incurred basis. The Court agrees.

The Policy itself is silent as to the time frame for the advancement of defense costs. The Policy simply states that costs shall be advanced "at the written request of the Insured . . . prior to the final disposition of the Claim." While the Policy may be silent regarding timing, the Policy's purpose is clear – companies such as Defendants purchase professional liability policies to limit the financial damage that they could incur defending against claims arising from the provision of professional services and, especially, to limit financial damage from such claims that ultimately are proven to lack merit. *See*, *e.g.*, *Brady v. i2 Techs. Inc.*, No. Civ. A. 1543-N, 2005 WL 3691286, at *3 (Del. Ch. 2005) (unpublished) ("Advancement [of defense costs] is an option to borrow, triggered upon the initiation of a lawsuit or proceeding; its value lies in the cheap (usually free) access to capital required to maintain a rigorous defense . . . ."). Accordingly, given the purposes and object of professional liability insurance policies, such as the one at-issue, the Court finds that Plaintiffs have a duty to advance defense costs on a contemporaneous, as-incurred basis. This is a benefit Defendants

purchased.[7]  This finding is consistent with the findings of other courts that have construed similar provisions.  *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 466-67 (S.D.N.Y. 2005); *HLTH Corp. v. Agric. Excess & Surplus Ins. Co.*, No. 07C-09-102, 2008 WL 3413327, at *13-14 (Del. Super. Ct. July 31, 2008) (unpublished).

Accordingly, for the foregoing reasons, Defendants'/Counterclaimants' Motion for Partial Summary Judgment that Plaintiffs Must Advance Defense Costs Contemporaneously (Doc. #24) is granted.

**B.    WHETHER PLAINTIFFS HAVE A DUTY TO INDEMNIFY**

The parties dispute whether Plaintiffs have a duty to indemnify.  Plaintiffs assert that, because the Underlying Actions arise out of the bankruptcy or suspension of payment by BLMIS, the Policy's exclusionary provision absolves them of their indemnification duties.  (Doc. # 43 at 7) (referring to argument at Doc. # 38 at 11-19). Plaintiffs also contend that the indemnification issue is ripe for this Court's determination because the outcome of the indemnification issue "is not determinative" of the outcome of the Underlying Actions and, therefore, "the Court can decide the [indemnification issue] without prejudicing Defendants in the [U]nderlying [A]ctions."  (*Id.* at 7-11).  In sum, Plaintiffs assert that the instant indemnification issue is "independent and separable" from the issues in the Underlying Actions.

---

[7]  In light of the stay extending to all claims and counterclaims except for the duty to advance defense costs, the Court's finding does not extend to whether Defendants Robert Beriault Holdings, Inc., Lincoln Trust Company, and NTC & Co. are Insureds and are entitled to coverage for defense costs under the Policy.  (Amended Compl., Doc. # 35, Claim 2.)

In Colorado, "the duty to indemnify relates to the insurer's duty to satisfy a judgment entered against the insured" and "arises only when the policy actually covers the alleged harm[.]" *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). Simply stated, "indemnity flows from the nature of the ultimate verdict, judgment, or settlement." *Id.* at 301. "[A] resolution of the duty to indemnify is premature where . . . the liability of the insured has not yet been determined." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 621 (Colo. 1999); *see also Hecla Mining Co.*, 811 P.2d at 1086 & n.5 (noting that the duty to indemnify can only be determined after the insured's liability has been decided). "A federal court generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989). An anticipatory declaratory judgment action, such as this, must be "independent and separable" from the underlying action, so as not to unduly prejudice the insured in the underlying action. *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 562-63 (Colo. 1996).

While Plaintiffs assert that Defendants cannot point to any disputed issues of material fact that overlap the coverage issue and the underlying Madoff Actions, that surely is not the case. Defendants contend that they would have to make assertions in the present case regarding the issue of indemnification and whether the Underlying Actions arise out of a bankruptcy or suspension of payment that would be contrary to their interests in the Underlying Actions. Both in the instant case and in the underlying Consolidated Class Action, which is pending before the Undersigned, the parties

17

dispute whether the loss of IRA funds arose out of a bankruptcy or suspension of payment. As a defense to the claims against them in the Underlying Actions, Defendants may very well assert that the loss of funds was due to BLMIS's bankruptcy – not Defendants' actions or inactions. Without question, such a defense would prejudice Defendants in the instant action because it could trigger the insolvency exception and absolve Plaintiffs of a duty to indemnify.

Defendants raised these very concerns in the Motion to Stay All Proceedings Except as to Whether Plaintiffs Have a Duty to Advance Defense Costs Contemporaneously (Doc. # 26), which Magistrate Judge Shaffer granted on March 1, 2010 (Doc. # 34.) In that Motion to Stay, Defendants specifically noted that, in order to decide whether the Policy's bankruptcy exclusion absolves Plaintiffs of their duty to indemnify, the Court must determine: (1) whether a bankruptcy of or suspension of payment by BLMIS was a "but for" cause of the loss of IRA funds, (2) whether and what other causes contributed to those injuries, and (3) whether and how those multiple causes created or interrupted the ultimate causation chain. (Doc. # 26 at 9) (citing *Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916, 924 (10th Cir. 2008)). These causation issues will be resolved in the Underlying Actions. Therefore, the indemnification issue in the instant case is not independent and separable from the causation issues in the Underlying Action. Accordingly, the instant duty to indemnify dispute is distinguishable from *Progressive Cas. Ins. Co. v. Herring*, 22 P.3d 66 (Colo. 2001), a case cited by Plaintiffs, in which no disputed issues of fact existed regarding the insurance policy or the underlying action as it relates to the insurance policy.

In light of the intertwined nature of the indemnification issues in the instant case and the causation issues in the Underlying Actions, and the previously-imposed stay of proceedings on all issues except for the duty to advance defense costs, Plaintiffs' Cross Motion for Summary Judgment that Plaintiffs Do Not Have a Duty to Indemnify (Doc. # 43) is denied as premature.

Accordingly, IT IS ORDERED THAT:

(1) Defendants/Counterclaimants' Motion for Partial Summary Judgment that Plaintiffs Must Advance Defense Costs Contemporaneously (Doc. # 24) is GRANTED;

(2) Plaintiffs' Cross Motion for Summary Judgment that Plaintiffs Do Not Have a Duty to Indemnify (Doc. # 43) is DENIED AS PREMATURE; and

(3) Upon the resolution of the causation issues in the Underlying Actions, Plaintiffs may seek leave to renew their Cross Motion for Summary Judgment.

DATED: December   09  , 2010

BY THE COURT:

*Christine M. Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge